SAMUEL MEEKS and Others, as Executors, etc., of JOHN MEEKS, Deceased, Respondents, v. JULIA A. RING, Appellant.

*Change in the condition of demised premises between the letting thereof and the commencement of the term — construction of a lease for " a term of three years from the first day of May," as to the commencement of the term*

Although there is no implied warranty in the letting of a house that it shall be reasonably fit for habitation, or for any other purpose for which it is let, yet there is an implied warranty that the condition of the premises shall be substantially the same at the beginning of the term as at the time of the execution of the lease thereof

If any material change has taken place during this period in the condition of the premises, the tenant is not bound to accept the same under the lease made thereof.

Where a tenant has taken a lease of premises " for the term of three years *from* the 1st day of May, 1884," which provides for the payment of the rent in advance on the first days of May, November, August and February, in each and every of said years, and contains a provision that, in case the demised premises should be partially destroyed by fire and not rendered wholly untenantable, the same should be repaired with all speed at the expense of the lessor, and a fire occurs on the premises prior to twelve o'clock noon on the first day of May, not rendering them wholly untenantable, the tenant must be governed by the provisions of the lease relating to a partial destruction of the premises by fire, as under such a lease the term commences on the first day of May.

Appeal from judgment entered in the New York county clerk's office January 20, 1886, upon verdict directed in favor of the plaintiffs.

*G. W. Cotterill*, for the appellant.

*J. R. Reed*, for the respondents.

Hun — Vol. LI       42

VAN BRUNT, P. J.:

In March, 1884, the plaintiff leased to the defendant, by a written indenture of lease, the premises 136 Madison avenue, for the term of three years *from* the 1st day of May, 1884. This lease contained a provision that, in case the premises leased should be partially damaged by fire and not rendered wholly untenantable, the same should be repaired with all speed at the expense of the plaintiff; but in case the damage should be so great as to render the premises untenantable the rent should be proportionately paid up to the time of such destruction, and from thenceforth should cease until such time as the same should be put in good repair. Prior to twelve o'clock on the 1st of May, 1884, a fire occurred on the premises by which they were more or less damaged, according to the testimony of the defendant, to such an extent that they could not be occupied by her, and which, she testified, was admitted by the plaintiff; but, according to the plaintiff, such injury was slight, and although it required repairing, yet still it would not have interfered with the occupancy of the premises by the defendant. The defendant having refused to take possession, this action was brought to recover for the first quarter's rent. The defendant resisted the claim, and, upon the trial, a verdict was directed in favor of the plaintiff.

In the disposition of the case we are somewhat embarrassed by the fact that there was no request to go to the jury, and that both parties insisted upon a direction. The court granted the motion of the plaintiff, and this was duly excepted to by the defendant. Although there is no implied warranty in the letting of a house that it shall be reasonably fit for habitation or any other purpose for which it is let, yet there is certainly an implied warranty that the condition of the premises shall remain substantially the same between the time of the execution of the lease and the beginning of the term. If this is not the case, then the landlord is not in a condition to tender for occupation that which is described in the lease and which has been hired. Therefore, if any material change has taken place during this period, it is clear that the tenant is not bound to take possession as the premises tendered are not those hired.

In the case at bar there was evidence tending to show that the premises, because of the fire, were unfit for the purposes for which the defendant hired them to the knowledge of the plaintiff, and that

this was conceded by the lessor. If this was true, and this changed condition occurred prior to the commencement of the term, the lessee was not bound to take possession of the premises, as they were not in the condition in which they were when she executed the lease. It is true that this evidence is contradicted on the part of the plaintiffs, but this contradiction would not, under such circumstances, justify a direction in their favor, there being this conflict of testimony.

The covenant in the lease in regard to repairs, to which attention has been directed, is referred to as applicable to the case at bar; and that because the premises were not rendered wholly untenantable, the rent was not suspended and the defendant was bound to take possession. It is apparent, from a reading of the lease, that this covenant has no application to any period of time prior to the commencement of the term, as the provision of the lease is that in case the damage shall be so extensive as to render the premises untenantable, the rent shall be proportionately paid up to the time of such destruction, and shall from thenceforth cease until such time as the same shall be put in good repair. The damage by fire here referred to is clearly a fire occurring during the term, and can have no application to damage which has occurred before the commencement of the term.

The real question presented, therefore, is, when did the term commence under this lease? It has been held, since the cases of *Thornton* v. *Payne* (5 Johns., 74) and *Wilcox* v. *Wood* (9 Wend., 346), that a lease of premises from the first of May in one year to the first of May in the succeeding year excludes the first day. But the true rule seems to have been laid down by Lord MANSFIELD in *Pugh* v. *The Duke of Leeds* (2 Cowp., 714), which was, "that the words 'from a day' may either include or exclude that day according to the context and subject-matter;" and the court will construe it so as to effectuate the intentions of the parties and not to destroy them. In a comment upon this decision, it has been suggested that it is at least singular that the same court, which decided the case cited but three years before, gave an opposite judgment upon almost precisely the same state of facts. (*Doe* v. *Watton*, 1 Cowp., 189.) The latter judgment, however, should be considered as the binding one, approved as it has been in the case of *Ackland* v. *Lutley* (9 Adol. & Ell., 879).

Applying this rule to the case at bar, it will be seen that it undoubtedly was the intention of the parties that the term should commence on the first of May. The *habendum* of the lease was " to have and to hold * *. * from the 1st day of May, 1884, for and during and until the full end and term of three years thence next ensuing and fully to be complete and ended." The rent was provided to be paid in equal quarterly payments in advance, to wit, on the first days of May, November, August and February in each and every of said years. This language clearly indicates that the rent was to be paid at the commencement of each quarter, the first payment being coincident with the commencement of the term. That the term was understood to commence on the first day of May is also indicated by the acts of the parties, as the lessee expected to take possession on that day.

Under these circumstances, it must be held that the term commenced on the first of May, and the fire occurring during the term covered by the lease, the rights of the parties must be governed by its provisions in respect thereto. The damage was not of a character to absolve the tenant from the payment of rent under the lease, and, consequently, although it seems a hard case for the appellant, the respondent was entitled to a recovery in this action.

The judgment should be affirmed, with costs.

BRADY and MACOMBER, JJ., concurred.

Judgment affirmed, with costs.